Case 1:00-cv-00234-RGJ-JDK   Document 1   Filed 02/09/00   Page 1 of 5 PageID #: 1

RECEIVED
FEB - 9 2000
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED
FEB - 9 2000
ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

ALISHA WYATT

VERSUS

HUNT PLYWOOD COMPANY, INC.

NUMBER: 10986

35TH JUDICIAL DISTRICT COURT

GRANT PARISH, LOUISIANA

CV00-0234 A

JUDGE LITTLE

MAGISTRATE JUDGE KIRK

## PETITION

The petition of ALISHA WYATT with respect represents:

1.

Petitioner is ALISHA WYATT, a female adult and a resident of LaSalle Parish, Louisiana.

2.

Defendant herein is:

HUNT PLYWOOD COMPANY, INC., (hereinafter "Hunt"), a Louisiana corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is A. T. Hunt, Jr., 401 Reynold Drive, Ruston, Louisiana 71270.

3.

Petitioner was employed by HUNT from March of 1994 until May 17, 1995, as a Utility Hand, working at Hunt's plant in Pollock, Grant Parish, Louisiana.

4.

Petitioner's immediate supervisor was John Thompson. Mr. Thompson was supervised by Donald Gorum who also supervised petitioner.

5.

Beginning in approximately late March of 1994, through November 11, 1994, John Thompson sexually harassed petitioner by, on a continual basis, asking her to have sex with him to which she continually refused, asking her to meet with him so she could have sex with him, and using vulgar terms to refer to her female anatomy. Mr. Thompson advised petitioner that if she would have sex with him that she would "have it made" on the job.



6.

Mr. Thompson also retaliated against plaintiff for not accepting his advances, by assigning her to a strenuous and physically demanding job to which females are rarely assigned, ordering her to scrape the walls in the heater, knowing it aggravated her asthma, calling her names such as "sarcastic bitch," and grabbing her around the waist from behind while she was in the heater.

7.

Petitioner continually complained to Donald Gorum who did nothing to stop Mr. Thompson's actions.  Mr. Gorum stated he did not understand why petitioner was so upset.  Mr. Gorum participated in the sexual harassment by offering petitioner money to have sex with him and to stay with him when his wife was out-of-town.  Mr. Gorum also called petitioner at home asking her to meet him and even followed her home one evening.

8.

On November 12, 1994, Thompson pulled down petitioner's pants to her ankles in the presence of co-employees and Gorum.  Following the incident, Gorum and Thompson attempted to persuade petitioner not to take action against Thompson and to lie about what actually happened so that Thompson would not be fired.  Petitioner refused to do so.

9.

Although defendant HUNT terminated Thompson and Gorum, co-employees began to retaliate against petitioner for her complaints of the harassment.  Harassment consisted of laughing about the incident of Thompson pulling down petitioner's pants, stating that petitioner did not wear underwear, which was untrue, or describing her underwear.  Employees gossiped that Mr. Gorum claimed he was having a sexual relationship with petitioner, even though it was false that they had ever had a sexual relationship.  Ms. Wyatt was present on several of these occasions or heard about the comments from others.

10.

Petitioner complained several times to supervisory personnel as to the continued

harassment by co-employees. In approximately March of 1995, Ms. Wyatt met with Larry Manthe, the plant manager, and expressed her complaints as to the continued harassment and retaliation. The only action taken by Mr. Manthe was to tell the employees at a safety meeting that the incident in November was over and to stop "picking on" petitioner.

11.

After the March safety meeting, employees would state in plaintiff's presence that they could not pick on her anymore or she would "run and tell." This lower level of harassment continued for about two weeks, followed by the employees completely ignoring petitioner to the extent that when she walked into a room, they stopped talking and looked at her.

12.

The harassment then escalated in the following ways:

(a) Her two supervisors gave her conflicting instructions, and when she advised her supervisor of the problem, he responded, "well, why don't you go ahead and quit so we can stop harassing you."

(b) Not allowing her to take a break.

(c) On April 14, 1995, petitioner used a piece of cardboard on which to write some figures and on which she signed her name and inserted the date. Petitioner left the area, and, when she returned, the words "for a good f-- call" were inserted on the cardboard above her name.

(d) Co-employees continued to make comments regarding the November incident of Thompson pulling down her pants.

13.

Petitioner had also complained to other supervisors. One responded to petitioner that "he couldn't go around telling people to stop all the time" and that he had more important things to do.

14.

In March, 1995, petitioner began treatment with a therapist for the embarrassment,

insomnia, fear, and withdrawal she was experiencing due to the harassment and retaliation. Plaintiff has also been taking prescription medication for these symptoms.

15.

Through her therapy sessions, it was determined that she could no longer tolerate the harassment and that her only alternative was to resign her employment, which she did, on May 17, 1995.

16.

As a result of defendant's actions, plaintiff has suffered embarrassment, humiliation, loss of self esteem and emotional distress for which she had incurred medical expenses. Plaintiff has also suffered lost wages and benefits as a result of the constructive discharge. Accordingly, plaintiff is entitled to past and future compensatory damages.

17.

Plaintiff timely filed a charge of discrimination and retaliation with the Louisiana Commission on Human Rights via the Equal Employment Opportunity Commission on January 27, 1995.

18.

Defendant is liable to petitioner under La. R.S. 23:1006, et. seq. and 51:2262, et. seq., as well as for assault, battery and intentional infliction of emotional distress.

19.

Defendant is liable to plaintiff for reasonable attorney's fees and costs including expert witness fees.

20.

Petitioner requests a trial by jury on all issues so triable.

**WHEREFORE PETITIONER PRAYS** that defendant be duly served with a copy of this petition and cited to appear and answer same; that after due delays and legal proceedings had, that there be judgment herein in favor of petitioner, **ALISHA WYATT**, and against defendant, **HUNT PLYWOOD COMPANY, INC.**, awarding petitioner compensatory damages, attorney's fees, costs, including expert witness fees, all with legal

interest from date of judicial demand, and such other relief as is just and equitable.

FURTHER PRAYS that petitioner be granted a jury trial herein for issues which are triable by jury.

                        WALKER, TOOKE, LYONS & JONES, L.L.P.

BY: _____
      Laurie W. Lyons
      (Attorney ID #9328)
1700 Irving Place
Shreveport, LA 71101
(318)221-8644


MCCOY, HAWTHORNE ROBERTS & BEGNAUD, LTD.

DEE A. HAWTHORNE    #16962

300 St. Denis Street
P. O. Box 1369
Natchitoches, LA 71458-1369
(318) 352-6495

ATTORNEYS FOR PLAINTIFF,
ALISHA WYATT

**PLEASE SERVE:**

HUNT PLYWOOD COMPANY, INC.
Through its Agent for Service of Process
A. T. Hunt, Jr.
401 Reynolds Drive
Ruston, Louisiana 71270